**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1858
_____

In re: ROBERT SZCZYPORSKI; BONNIE SZCZYPORSKI,
                                                            Debtors

Robert Szczyporski,
                                                            Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:20-cv-03133)
District Judge: Honorable Joseph F. Leeson, Jr.
_____

Argued on January 27, 2022

Before: HARDIMAN, SHWARTZ, and SMITH, *Circuit Judges*.

(Filed: May 11, 2022)

Sergey Joseph Litvak [argued]
Litvak Legal Group, PLLC
3070 Bristol Pike

Building One, Suite 204
Bensalem, PA 19020

*Counsel for Debtor-Appellant Robert Szczyporski*

David A. Hubbert
Pooja A. Boisture [argued]
Ellen P. DelSole
United States Department of Justice
Tax Division
950 Pennsylvania Avenue, NW
P.O. Box 502
Washington, DC 20044

*Counsel for Defendant-Appellee Internal Revenue Service*

_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

This appeal involves the interaction of two federal laws: the Patient Protection and Affordable Care Act (ACA) and the Bankruptcy Code.

The ACA requires certain individuals to maintain "minimal essential [health insurance] coverage" throughout the year (the Individual Mandate). 26 U.S.C. § 5000A(a). A person subject to the Individual Mandate who fails to maintain the required insurance for one month or more is assessed a "shared responsibility payment." *Id.* § 5000A(b)(1). Though described by the statute as a "penalty," *id.*, the payment is

collected by the Internal Revenue Service along with one's federal income tax return. *Id.* § 5000A(b)(1)–(2).

Whether the payment is a "penalty" or a "tax" remains contested. In *NFIB v. Sebelius*, 567 U.S. 519 (2012), the Supreme Court held that the shared responsibility payment is a tax for constitutional purposes, *id.* at 570, but is not a tax for purposes of the Anti-Injunction Act, *id.* at 546. This appeal requires us to decide whether the shared responsibility payment is a tax for bankruptcy purposes. If it is, we must also determine whether it is entitled to priority under the Bankruptcy Code.

I

In July 2019, Robert and Bonnie Szczyporski (Debtors) filed a Chapter 13 bankruptcy petition. The IRS filed a proof of claim against their estate for various unpaid taxes and interest, including a $927.00 shared responsibility payment the Debtors owed for failing to maintain health insurance in 2018. The IRS's proof of claim characterized the payment as an "EXCISE" tax entitled to priority. The Debtors objected to the IRS's claim, arguing that the shared responsibility payment was not a tax. They claimed it was a penalty not entitled to priority.

The Bankruptcy Court confirmed the Debtors' repayment plan in February 2020, but reserved decision on their objection to the IRS's proof of claim. After briefing from the parties and a hearing, the Bankruptcy Court held: (1) under *NFIB v. Sebelius*, the shared responsibility payment is a tax—not a penalty—for bankruptcy purposes; and (2) the payment is entitled to priority under Section 507(a)(8) of the Bankruptcy Code, 11 U.S.C. § 507(a)(8), as either an income or an excise

3

tax. *In re Szczyporski*, 617 B.R. 529, 531–32 (Bankr. E.D. Pa. 2020).

The District Court affirmed. *In re Szczyporski*, 531 F. Supp. 3d 934, 936 (E.D. Pa. 2021). The Court found *Sebelius*'s analysis dispositive but explained that it would also find the payment to be a tax for bankruptcy purposes under the functional examination we used in *In re United Healthcare Systems, Inc.*, 396 F.3d 247 (3d Cir. 2005). *In re Szczyporski*, 531 F. Supp. 3d at 939–40.

The District Court also agreed that the shared responsibility payment is entitled to priority, but only as an "income tax" under Section 507(a)(8)(A). *Id.* at 943; 11 U.S.C. § 507(a)(8)(A). The Court concluded the payment is not entitled to priority as an excise tax, since it is not a tax "on a transaction" as required by Section 507(a)(8)(E). *In re Szczyporski*, 531 F. Supp. 3d at 942. The Debtors filed this timely appeal.

II

The Bankruptcy Court had jurisdiction over the Debtors' objection to the IRS proof of claim under 28 U.S.C. §§ 157(b) and 1334. The District Court had appellate jurisdiction under 28 U.S.C. § 158(a)(1). We have jurisdiction to review the District Court's order under 28 U.S.C. §§ 158(d) and 1291. We exercise plenary review over the District Court's legal conclusions. *In re Friedman's Inc.*, 738 F.3d 547, 551–52 (3d Cir. 2013).

4

## III

The IRS has litigated the priority status of the shared responsibility payment since at least 2018, with mixed results. Some district and bankruptcy courts have held that the payment was not entitled to priority, either because the payment (1) was a penalty, and not a tax, for bankruptcy purposes[1] or (2) was not "an excise tax on a transaction" or "a tax on or measured by income," as required for priority under § 507(a)(8).[2] Two courts held, like the Bankruptcy Court here, that the payment may be entitled to priority as either an excise or income tax. *In re Cousins*, 601 B.R. 609, 621 (Bankr. E.D. La. 2019); *In re Gabbidori*, 2020 WL 3566538, at *1 (Bankr. S.D. Fla. June 4, 2020). And two other courts held, like the District Court here,

---

[1] *In re Albracht*, 617 B.R. 851, 854 (Bankr. E.D.N.C. 2020); *In re Bailey*, 2019 WL 2367180, at *5 (Bankr. E.D.N.C. May 24, 2019), *vacated as moot*, 2019 WL 7403930 (E.D.N.C. Nov. 22, 2019); *In re Parrish*, 583 B.R. 873, 881 (Bankr. E.D.N.C. 2018), *vacated as moot*, 2018 WL 6273577, at *3 (E.D.N.C. Nov. 30, 2018).

[2] *IRS v. Alicea*, 634 B.R. 54, 64 (E.D.N.C. 2021) (payment is not entitled to priority as an excise or income tax), *appeal docketed*, No. 21-2220 (Oct. 22, 2021); *IRS v. Huenerberg*, 623 B.R. 841, 845 (E.D. Wis. 2020) (payment is not entitled to priority as an excise tax); *In re Vallejo*, 2021 WL 5702699, at *3–7 (Bankr. D. Ariz. Nov. 23, 2021) (payment is not entitled to priority as an excise tax on a transaction or income tax); *In re Jones*, 610 B.R. 663, 669 (Bankr. D. Mont. 2019) (payment is not entitled to priority as an excise tax on a transaction and IRS's income tax argument "would likely fail").

5

that the payment was entitled to priority as an income tax.[3] Among the courts of appeals, the Fifth Circuit concluded in a non-precedential opinion that the payment is not entitled to priority as an excise tax because it is not assessed on a transaction. *In re Chesteen*, 799 F. App'x 236, 240–41 (5th Cir. 2020).

In our view, the shared responsibility payment is a tax "on or measured by income." So we join those courts that hold the shared responsibility payment is entitled to priority in bankruptcy under Section 507(a)(8)(A).

IV

"The Bankruptcy Code does not define 'tax.'" *United Healthcare*, 396 F.3d at 252 (citing *United States v. Reorganized CF & I Fabricators of Utah, Inc.*, 518 U.S. 213, 220 (1996)). When determining whether an exaction is a tax for bankruptcy purposes, the Supreme Court instructs us to "look[] behind the label placed on the exaction" to "the operation of the provision" and the exaction's "actual effects." *CF & I Fabricators*, 518 U.S. at 220–21 (citation omitted).

For that reason, we apply "a functional examination that balances the characteristics" of the exaction to determine whether it is a tax for bankruptcy purposes. *United Healthcare*,

---

[3] *In re Miller*, 634 B.R. 641, 646 (Bankr. M.D. Ga. 2021) (concluding the payment is an income tax, but not an excise tax); *In re Juntoff*, 2022 WL 830901, at *12–13, *13 n.16 (B.A.P. 6th Cir. Mar. 21, 2022) (holding the payment is a tax measured by income without addressing whether it is an excise tax).

396 F.3d at 255. In making our determination, we may consider the six *Lorber-Suburban* factors, which ask whether the exaction is

> (1) an involuntary pecuniary burden, regardless of name, laid upon individuals or property; (2) imposed by, or under authority of the legislature; (3) for public purposes, including the purposes of defraying expenses of government or undertakings authorized by it; (4) under the police or taxing power of the state[;] . . . [(5)] universally applicable to similarly situated entities; and [(6)] whether granting priority status to the government will disadvantage private creditors with like claims.

*United Healthcare*, 396 F.3d at 253 (internal quotation marks omitted) (first quoting *In re Lorber Indus. of Cal., Inc*., 675 F.2d 1062, 1066 (9th Cir. 1982), then quoting *In re Suburban Motor Freight, Inc.*, 36 F.3d 484, 488–89 (6th Cir. 1994)).

But these "six factors [do not] constrain our inquiry"; we can consider "any relevant factor." *Id.* at 255. For example, we can consider whether the payer received a particularized benefit. A payment made without regard for any "benefits bestowed by the [g]overnment on a taxpayer" is indicative of a tax, while "a payment . . . exchanged for a government benefit not shared by others" is generally not a tax. *Id.* at 260 (citing *Nat'l Cable Television Ass'n, Inc. v. United States*, 415 U.S. 336, 340–41 (1974)). And we can consider whether the government can alter the exaction, since the "ability to manipulate the assessment also is characteristic of a tax." *Id.* (citing *Nat'l Cable*, 415 U.S. at 341).

7

In sum, our examination of an exaction under *United Healthcare* is a "flexible" one that "allows us to consider the characteristics of the obligation in light of the evolving treatment of priority claims under the Bankruptcy Code." *Id.* at 256.

A

The District and Bankruptcy Courts held that the Supreme Court's determination that the shared responsibility payment is a tax for constitutional purposes is dispositive in the bankruptcy context. *In re Szczyporski*, 531 F. Supp. 3d at 939; *In re Szczyporski*, 617 B.R. at 531. We disagree.

While the Supreme Court's analysis in *Sebelius* shares features with our functional examination in *United Healthcare*, the analyses are not identical. Explaining why the shared responsibility payment is a tax for constitutional purposes, the Supreme Court observed that the payment (1) is administered like a tax, *Sebelius*, 567 U.S. at 563–64, and (2) lacks common characteristics of a penalty, *id.* at 566–68. But the Court did not address the *Lorber-Suburban* factors or other factors we have previously said were relevant for bankruptcy. *See United Healthcare*, 396 F.3d at 255–56, 260. Nor did *Sebelius* "rel[y] significantly on Bankruptcy Code Section 507 jurisprudence" as the IRS argues. *See* IRS Corr. Br. 23. The Supreme Court references only two cases from the bankruptcy context in its analysis. It cites *United States v. Sotelo*, 436 U.S. 268, 275 (1978), as the fourth case in a string of citations establishing that the "penalty" label is not determinative, *Sebelius*, 567 U.S. at 565. And it quotes *CF & I Fabricators* only to establish that a penalty necessarily entails "punishment for an unlawful act or omission," *id.* at 567 (quoting *CF & I Fabricators*, 518 U.S. at 224). Neither reference is essential to the Court's holding.

8

Moreover, the constitutional and bankruptcy contexts call for conflicting presumptions. "[E]very reasonable construction must be resorted to, in order to save a statute from unconstitutionality." *Sebelius*, 567 U.S. at 563 (opinion of Roberts, C.J.) (quoting *Hooper v. California*, 155 U.S. 648, 657 (1895)). But for purposes of bankruptcy priority, "provisions allowing preferences must be tightly construed." *Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 667 (2006) (citations omitted). These conflicting presumptions suggest that an exaction could function as a tax for the broader purpose of constitutional validity, but not within the narrower confines of bankruptcy priority.

The Supreme Court held in *Sebelius* that an exaction can be a "tax" for constitutional purposes but not for certain statutory purposes. *Compare* 567 U.S. at 543–46 (shared responsibility payment *is not* a tax under the Anti-Injunction Act); *with id.* at 563–74 (shared responsibility payment *is* a tax under the Constitution). Accordingly, there is no reason to conclude that *Sebelius*'s constitutional analysis is controlling in the context of the Bankruptcy Code.[4]

---

[4] Several other courts agree. *See In re Juntoff*, 2022 WL 830901, at *5; *IRS v. Alicea*, 634 B.R. at 61–62; *In re Albracht*, 617 B.R. at 854; *In re Jones*, 610 B.R. at 666; *In re Bailey*, 2019 WL 2367180, at *2; *In re Parrish*, 583 B.R. at 878–79. *But see In re Vallejo*, 2021 WL 5702699, at *2 (noting that *Sebelius* authoritatively construed the payment as a tax, but not necessarily a tax entitled to priority in bankruptcy); *In re Cousins*, 601 B.R. at 615–16 & n.26 (observing that, while "a determination for constitutional purposes may differ from one based on § 507(a)," because the "[*Sebelius*] Court applied the

B

The Supreme Court's *Sebelius* analysis is not dispositive in the bankruptcy context, but we find it persuasive. Based on the functional examination of the shared responsibility payment's actual effects and operation, we conclude that the payment is a tax for bankruptcy purposes. *See United Healthcare*, 396 F.3d at 255–56.

All six of the *Lorber-Suburban* factors indicate that the payment is a tax. First, the payment is an involuntary pecuniary burden upon individuals who fail to maintain minimum health insurance coverage. *See* 26 U.S.C. § 5000A(b)(1). Second, it was imposed by Congress. *See id.* Third, it was levied for the public purpose of "expand[ing] health insurance coverage." *Sebelius*, 567 U.S. at 567. Fourth, it was imposed under Congress's taxing power. *Id.* at 570. Fifth, it is universally applicable to all taxpayers subject to the Individual Mandate who fail to maintain minimum health insurance coverage. *See* 26 U.S.C. § 5000A(b)(1). And sixth, granting priority status to the IRS will not disadvantage similarly situated private creditors (since there are none). *See In re Jones*, 610 B.R. 663, 667 (Bankr. D. Mont. 2019). The *Lorber-Suburban* factors suffice to establish that the shared responsibility payment is a tax. *See United Healthcare*, 396 F.3d at 256.

The Debtors argue that the fifth and sixth *Lorber-Suburban* factors are not satisfied. They are, for the reasons we described. But even if they were not, our conclusion is supported by other relevant factors. The shared responsibility

same test [as required in bankruptcy], the Court's analysis controls").

10

payment is not "exchanged for a government benefit not shared by others." *See id.* at 260 (citation omitted). And the government can—and did—"manipulate the [payment] to encourage or discourage" health insurance purchases. *See id.* at 254 (citation omitted); Budget Fiscal Year, 2018, Pub. L. No. 115-98, § 11081, 131 Stat. 2054, 2092 (2017) (codified at 26 U.S.C. § 5000A(c)) (reducing the shared responsibility payment to $0 beginning in 2019).

Moreover, as the Supreme Court observed in *Sebelius*, the shared responsibility payment is calculated and administered like a tax: it (1) "is paid into the Treasury by taxpayers when they file their tax returns"; (2) "does not apply to individuals who do not pay federal income taxes because their household income is" too low; (3) is calculated using factors familiar to the tax context, such as "taxable income, number of dependents, and joint filing status"; (4) "is found in the Internal Revenue Code and enforced by the IRS"; (5) is "assess[ed] and collect[ed] . . . in the same manner as taxes"; and (6) "produces at least some revenue for the [g]overnment." *Sebelius*, 567 U.S. at 563–64 (cleaned up).

Finally, as the Supreme Court also explained, despite its statutory "penalty" label, the shared responsibility payment lacks typical penal characteristics. The payment does not impose a heavy financial burden, has no scienter requirement, cannot be enforced through punitive means like criminal prosecution, and is not imposed for an unlawful act. *Id*. at 566–68.

\* \* \*

11

Looking behind the payment's label to its actual effects, we hold that the shared responsibility payment is a tax for bankruptcy purposes.

V

Having determined that the shared responsibility payment is a tax for bankruptcy purposes, we must decide whether it is entitled to priority under the Bankruptcy Code. Only taxes enumerated in Section 507(a)(8) are entitled to priority status. The IRS argues the shared responsibility payment should receive priority as either (1) "a tax on or measured by income or gross receipts," 11 U.S.C. § 507(a)(8)(A), or (2) "an excise tax on . . . a transaction," *id.* § 507(a)(8)(E)(i)–(ii). We agree with the District Court that the shared responsibility payment is entitled to priority as "a tax on or measured by income." *See id.* § 507(a)(8)(A).

As a preliminary matter, we observe that res judicata does not, as the Debtors argue, bar us from considering the IRS's income tax argument. "[A] confirmation order is *res judicata* as to all issues decided or which could have been decided at the hearing on confirmation." *In re Szostek*, 886 F.2d 1405, 1408 (3d Cir. 1989); 11 U.S.C. § 1327. But here, the confirmation order did not decide the priority of the IRS's claim because the order expressly provided that the claim's priority would be resolved after plan confirmation. Nor did the order purport to limit the arguments either party could make. Though the IRS listed the shared responsibility payment as an "EXCISE" tax on its proof of claim, it argued before the Bankruptcy Court that the payment was entitled to priority as either an income or excise tax. Res judicata does not preclude the IRS from continuing to press that argument here.

12

On the merits, the Debtors contend that the shared responsibility payment is not an "income tax" entitled to priority under Section 507(a)(8)(A). We agree that the payment is not a traditional tax "on" income earned or received. Section 507(a)(8)(A)'s plain language, however, grants priority not only to traditional income taxes, but also to taxes, like the shared responsibility payment, whose amounts are calculated based on the taxpayer's income.

"When statutory language is plain and unambiguous, 'the sole function of the courts . . . is to enforce it according to its terms.'" *In re Visteon Corp.*, 612 F.3d 210, 220 (3d Cir. 2010) (omission in original) (quoting *Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004)). Section 507(a)(8)(A) extends priority status to "a tax on or measured by income or gross receipts." 11 U.S.C. § 507(a)(8)(A). The first "or" signals that the provision applies to two categories of income tax claims, either of which qualifies for priority status: (1) "a tax on . . . income" or (2) "a tax . . . measured by income." *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 121–22 (2012); *see also In re Williams*, 188 B.R. 331, 337 (E.D.N.Y 1995) (observing that Section 507(a)(8)(A) is not limited to "income tax[es]"). The shared responsibility payment fits comfortably within the second category, as "a tax . . . measured by income." 11 U.S.C. § 507(a)(8)(A). When the Debtors incurred the obligation in 2018, its amount was "calculated as a percentage of household income, subject to a floor based on a specified dollar amount and a ceiling based on the average annual premium," *Sebelius*, 567 U.S. at 539; *see* 26 U.S.C. § 5000A(c).

The Debtors counter that income is "only indirectly considered in the first level of inquiry [along with] other factors," so the payment is not "measured by" income. Debtors

13

Br. 20. But the statute shows that, when Debtors incurred the obligation in 2018, the payer's household income played an essential role in determining the amount of the shared responsibility payment owed. 26 U.S.C. § 5000A(c), (e).

First, individuals who could not afford coverage because their household income was below a specified level, *id.* § 5000A(e)(1), or who had income below the threshold for filing a tax return, *id.* § 5000A(e)(2), owed no shared responsibility payment. Next, taxpayers who could afford coverage were assessed an amount that depended on their household income and the number of months the taxpayer (or other members of his household) were without coverage. Taxpayers with low incomes owed a flat fee based on an "applicable dollar amount" set by the IRS. *See id.* § 5000A(c)(1)(A), (c)(2)(A), (c)(3). Taxpayers with high incomes also owed a flat fee, but it was based on the national average premium for a qualifying health insurance plan. *See id.* § 5000A(c)(1)(B). Taxpayers with incomes between the low-income and high-income cut-offs owed an amount based on a percentage of the taxpayer's "excess" income above the filing threshold, up to a maximum of the national average premium. *See id.* § 5000A(c)(1)(A), (c)(2)(B)(iii).

A simple example using the IRS's payment estimator is illustrative. *See* IRS Taxpayer Advocate Service, *The Individual Shared Responsibility Provision Payment Estimator*, https://www.taxpayeradvocate.irs.gov/estimator/ isrp/estimator.htm. Consider a single taxpayer who went without health insurance for all of 2018. If the taxpayer's gross annual income was less than $12,000 (the minimum filing threshold for 2018), he would not owe any shared responsibility payment. *See* 26 U.S.C. § 5000A(e)(2); *see also id.* § 6012(a)(1)(A)(i); Rev. Proc. 2018-18 §§ 3.14, 3.24

14

(calculating a minimum filing threshold based on the $12,000 standard deduction and $0 personal exemption for 2018). If the taxpayer's income was more than $12,000 but less than $39,800 (the 2018 low-income cut-off for the taxpayer's filing status), he would owe the flat dollar amount specified by the IRS, which was $695. *See* 26 U.S.C. § 5000A(c)(1)(A), (c)(2)(A)(i), (c)(3)(A); Rev. Proc. 2017-58 § 3.40 (specifying an applicable dollar amount of $695 for 2018). If the taxpayer's income was more than $147,840 (the 2018 high-income cut-off for the taxpayer's filing status), he would owe an amount equal to the national average health insurance premium, which was $3,396. *See* 26 U.S.C. § 5000A(c)(1)(B); Rev. Proc. 2018-43 § 3.01–.02 (specifying a monthly national average premium of $283 per individual for 2018).

If the taxpayer's income was between the low-income and high-income cut-offs (between $39,800 and $147,850), he would owe an amount equal to 2.5 percent of his income above the $12,000 filing threshold. *See* 26 U.S.C. § 5000A(c)(1)(A), (c)(2)(B); *id.* § 5000A(c)(2)(B)(iii) (2012) (specifying a penalty of 2.5 percent for 2016 and after). For example, if the taxpayer's income was $50,000, he would owe $950 (which is 2.5 percent of $38,000). If the taxpayer's income was $100,000, he would owe $2,200 (which is 2.5 percent of $88,000). Because the amount due under each of these scenarios is based on the taxpayer's household income, the shared responsibility payment is an obligation "measured by income," even when the payment is a flat fee rather than a percentage of income. *Accord In re Juntoff*, 2022 WL 830901, at *12.

That the shared responsibility payment provision is located in a portion of the Internal Revenue Code titled "Miscellaneous Excise Taxes," 26 U.S.C. Subtitle D, does not

15

alter our conclusion that the payment is measured by income. Titles within the Internal Revenue Code have no legal effect. 26 U.S.C. § 7806(b). Nor is the IRS's initial characterization of the payment as an "EXCISE" tax on its proof of claim determinative. Payment obligations may fall under more than one bankruptcy priority category. *See In re Groetken*, 843 F.2d 1007, 1013–14 (7th Cir. 1988) (concluding that a state tax on retailers may be both a tax "on or measured by . . . gross receipts" and an excise tax).[5]

\* \* \*

For the reasons stated, we hold that the shared responsibility payment is a tax "measured . . . by income." As such, it is entitled to priority under Section 507(a)(8)(A). We will affirm the District Court's order.

---

[5] Even if the shared responsibility payment could be considered an excise tax, we agree with the District Court's conclusion that the payment is not entitled to priority under 11 U.S.C. § 507(a)(8)(E) as "an excise tax . . . on a transaction" because the failure to purchase healthcare is not a "transaction." *See In re Szczyporski*, 531 F. Supp. 3d at 941–42.